IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| J.C. PENNEY CORPORATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 1826 |
| | ) | |
| MILWAUKEE GOLF DEVELOPMENT | ) | |
| COMPANY, LLC & INTER-TRACK | ) | |
| PARTNERS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff J.C. Penney Corporation, Inc.'s ("J.C. Penney") motion for a preliminary injunction. For the reasons stated below, we deny the motion for a preliminary injunction.

## BACKGROUND

J.C. Penney claims that it is a long-term anchor store at the Golf Mill Shopping Center ("Shopping Center") in Niles, Illinois. The Shopping Center is owned by Defendant Milwaukee Golf Development Company, LLC ("Milwaukee Golf"). J.C. Penney alleges that Milwaukee Golf has agreed to lease space at the

1

Shopping Center to an off-track betting parlor ("OTB Parlor"), owned by Defendant Inter-Track Partners, LLC ("Inter-Track"), and that the lease with the OTB Parlor interferes with several aspects of the lease between J.C. Penney and Milwaukee Golf ("J.C. Penney Lease").  J.C. Penney claims that it voiced its opposition to the OTB Parlor in October 2005, by notifying Milwaukee Golf in writing of its objections.  J.C. Penney further alleges that Milwaukee Golf did not stop its plans to lease space to Inter-Track, and that in February 2006, Inter-Track began renovating the space where it intended to open the OTB Parlor.  J.C. Penney also claims that Inter-Track initially planned to open the OTB Parlor in June 2006, and that Inter-Track later decided to open the OTB Parlor on April 24, 2006.

J.C. Penney filed the complaint in the instant action against Milwaukee Golf on April 3, 2006, and on the same day filed its motion for a preliminary injunction. On April 10, 2006, J.C. Penney filed an amended complaint, adding Inter-Track as a defendant.  The amended complaint includes a claim for specific performance and injunctive relief due to a breach of contract by Milwaukee Golf (Count 1), a claim for monetary damages due to a breach of contract by Milwaukee Golf (Count 2), and a claim for injunctive relief and damages due to intentional interference with a lease against Inter-Track (Count 3).  On April 13, 2006, we denied J.C. Penney's motion for a temporary restraining order.

## LEGAL STANDARD

A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Goodman v. Illinois Dept. of Financial and Professional Regulation*, 430 F.3d 432, 437 (7th Cir. 2005)(stating that "[a]s the Supreme Court has observed, '[a] preliminary injunction is an extraordinary and drastic remedy'")(quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). In order to obtain a preliminary injunction, a plaintiff must show that: "(1) [the plaintiff] ha[s] a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) [the plaintiff] will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the [defendant] will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Goodman*, 430 F.3d at 437. If the moving party meets "this threshold burden, then the inquiry becomes a 'sliding scale' analysis where these factors are weighed against one another." *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004).

## DISCUSSION

J.C. Penney is seeking a preliminary injunction prohibiting the OTB Parlor from opening or operating at the Shopping Center, pending the resolution of this action. As a preliminary matter, we note that J.C. Penney filed the instant motion before it amended the complaint to add Inter-Track as a defendant. However, under

Federal Rule of Civil Procedure 65(d), an injunction is binding not only on the parties to the injunction, but also upon "their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed. R. Civ. P. 65(d); *see also Rockwell Graphic Systems, Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 919 (7th Cir. 1996)(quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945) for the idea that "[t]he Supreme Court has explained that the last clause of Rule 65(d) 'is derived from the common law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control'"). In the instant action, Inter-Track's Lease puts it in privity with Milwaukee Golf. In addition, Inter-Track appeared at the TRO hearing before this court and has filed a response to the instant motion, showing that it has received notice of the motion. Accordingly, we will treat Inter-Track as a party to J.C. Penney's motion for a preliminary injunction.

I.  Likelihood of Success on the Merits

J.C. Penney has based its breach of contract claims and its intentional interference with lease claim on several provisions in the J.C. Penney Lease. To begin, J.C. Penney claims that "[u]nder the Lease, Milwaukee Golf committed to limit the Center tenants to retail and retail-related businesses, and to operate and maintain the Center according to the 'best standards of regional shopping center

4

practice.'" (Mot. 8). J.C. Penney, however, has not provided any evidence to show that opening the OTB Parlor would not be in accordance with the best standards of regional shopping center practice, other than its own affidavits, nor has it defined this term in any way. (Mot. 8). Moreover, Milwaukee Golf has provided the court with several articles from Illinois newspapers, discussing the other communities in the Chicago metropolitan area that have off-track betting ("OTB") parlors in their shopping malls. (M Resp. Ex. D, E). These articles show, contrary to J.C. Penney's contention, that in fact it is common practice in these communities, including those near Niles, to have OTB parlors in their shopping centers. Therefore, we find that J.C. Penney has not sufficiently established a likelihood of success on the merits on the issue of whether the existence of the OTB Parlor at the Shopping Center is in accordance with the best standards of regional shopping center practice.

J.C. Penney also argues that the Inter-Track Lease is in non-compliance with the J.C. Penney Lease because the automobiles that the OTB Parlor will attract will interfere with J.C. Penney's parking rights at the Shopping Center. J.C. Penney argues that under the J. C. Penney Lease, it must be provided 4.5 parking spaces for every 1000 square feet of space at the Shopping Center that it occupies. Defendants do not deny that the OTB Parlor will also need parking spaces for its customers at the Shopping Center. (M Resp. 5). However, as Milwaukee Golf correctly points out, the J.C. Penney Lease only states that J.C. Penney will be provided a certain ratio of parking spaces to square feet, just like any other establishment at the

5

Shopping Center is provided a certain ratio of parking spaces to square feet. There are no specifically designated parking spaces for particular tenants. For example, a customer visiting the Shopping Center may park in front of one establishment in an available parking space and continue to shop on foot at various other establishments. In addition, the OTB Parlor will be physically located at an existing vacant retail space at the Shopping Center, which means that no expansion is taking place that will physically infringe on any existing parking spaces at the Shopping Center. The fact that the OTB Parlor's patrons may use parking spaces, just like the patrons of the establishment that previously occupied the OTB Parlor's space, does nothing to alter the mathematical ratio that is provided in the J.C. Penney Lease. Accordingly, the existence of the OTB Parlor at the Shopping Center will not change the ratio of parking spaces to square feet that is provided in the J.C. Penney Lease.

In J.C. Penney's reply brief to the instant motion, J.C. Penney argues for the first time that the lease between Inter-Track and Milwaukee Golf ("Inter-Track Lease") allows Inter-Track to erect "'a tent in the Shopping Center parking area' each year for five separate events." (Rep. 2). According to J.C. Penney, this portion of the Inter-Track Lease is not in conformity with a provision of the J.C. Penney Lease providing that common areas of the Shopping Center shall not be fenced or obstructed and that "'no selling activities shall be permitted within the parking areas.'" (Rep. 2-3)(citing J.C. Penney 1985 Lease 13-14). However, J.C. Penney cannot now raise novel arguments in its reply brief. *See Aliwoli v. Gilmore*, 127

F.3d 632, 635 (7th Cir. 1997)(quoting *United States v. Feinberg*, 89 F.3d 333, 340-41 (7th Cir. 1996) for statement that "[t]he reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court"). The Inter-Track Lease was entered into on December 15, 2005, more than three months before J.C. Penney filed this action and its motion for a preliminary injunction. J.C. Penney did not include the tent provision of the Inter-Track Lease as a basis for its breach of contract claims in its original complaint, nor did J.C. Penney include it in its amended complaint that was filed on April 10, 2006. In addition, J.C. Penney did not argue the tent provision of the Inter-Track Lease in its motion for a temporary hearing order or in its brief accompanying the instant motion for a preliminary injunction. There is no reason that J.C. Penney could not have raised the argument regarding the tent provision in the Inter-Track Lease at an earlier time, and raising the issue now is improper since it denies Defendants an adequate opportunity to respond to the argument. Furthermore, J.C. Penney only makes vague arguments regarding the tent provision of the Inter-Track Lease, does not provide details regarding the specific activities that might be conducted in the tents, does not provide any detail relating to what common areas or parking areas of the Shopping Center would be affected, and does not provide the court with any specific reasons that the tent provision in the Inter-Track Lease would be in non-compliance of the J.C. Penney Lease.

Finally, J.C. Penney argues that the Inter-Track Lease is not in compliance with the portion of the J.C. Penney Lease that provides that only "establishments selling goods, wares, merchandise, food, beverages and services to the public at retail" may be located at the Shopping Center. (Mot. 4)(citing J.C. Penney Lease, Exp. Amdt. Par. 26(a)). However, the Inter-Track Lease provides that the OTB Parlor shall be a restaurant that "as a service to its patrons, . . . shall have the exclusive right to offer . . . wagering opportunities as may be lawfully conducted upon the Premises." (I Resp. 2)(citing Inter-Track Lease, Par. 1(m)). J.C. Penney has provided no arguments that could lead the court to find that there is a likelihood that it will be able to show that the OTB Parlor does not fit within the definition of a retail establishment that sells food, beverages, or services to the public. Therefore, we find that J.C. Penney has not sufficiently shown that there is a likelihood of success on the merits of its claims against Milwaukee Golf and Inter-Track.

II. Adequate Remedy at Law and Irreparable Harm

J.C. Penney argues that it has no adequate remedy at law if the OTB Parlor is allowed to open. Specifically, J.C. Penney claims that "[t]he loss of customers due to their inability to park conveniently to the JCPenney store at the Center, and resulting loss of goodwill, cannot be measured accurately." (Mot. 9). Loss of goodwill can be the basis for a finding of "irreparable harm that is not compensable by an award of money damages." *Gateway Eastern Ry. Co. v. Terminal R.R. Ass'n*

*of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994). However, J.C. Penney has not provided the court with specific information regarding any particular harms it may suffer. J.C. Penney has not shown that it will actually need the parking spaces that it is complaining about, and to the extent that it might be harmed by the loss of parking spaces, such harm can be remedied at law. In addition, the J.C. Penney Lease provides specific legal remedies and damages that J.C. Penney may seek if Milwaukee Golf breaches portions of the J.C. Penney Lease, including the provisions relating to parking. Therefore, any harm caused by a potential breach of the J.C. Penney Lease terms, including parking-related matters, can be adequately remedied at law.

III. Balancing of Harms

J.C. Penney argues that "[w]ith respect to [Defendants'] hardship, any possible harm is neither incalculable nor irreparable." (Mot. 12). However, while we found above that J.C. Penney's alleged harms are not specific, Defendants have alleged very specific harms that they would suffer if the opening or the operation of the OTB Parlor was enjoined. First, Inter-Track claims that it has spent over $1.7 million on renovations so far, in addition to the resources that it spent to obtain the necessary licensing and permits for its operations. (I Resp. 6-7). These significant investments will lay idle and not generate any return to Inter-Track if the operation of the OTB Parlor is enjoined for the duration of this action. In addition, Inter-Track

9

has already hired and trained more than 54 employees, all of whom would be out of a job during the pendency of this litigation if J.C. Penney is granted a preliminary injunction. J.C. Penney has not shown that any of its employees would need to be let go if the OTB Parlor opens at the Shopping Center, nor has it shown any specific damages, including monetary losses, that it would incur. Finally, J.C. Penney has not provided a sufficient explanation for why it did not file the instant action and motion until April 2006, which was more than five months after it first objected to the Inter-Track Lease. Due to J.C. Penney's late filing of the instant motion, Defendants have expended significant amounts of money that it would not have spent had J.C. Penney been successful in obtaining a preliminary injunction at an earlier date. Therefore, we find that the balancing of harms factor is in Defendants' favor in this case.

IV. Public Interest

The only argument made by J.C. Penney regarding the issue of the public interest factor is that there is a "strong public interest in fair dealing and the solemnity of contracts." (Mot. 13)(citing *K-Mart Corporation v. Oriental Plaza*, 875 F. 2d 907, 916 (1st Cir. 1989)). Defendants, on the other hand, argue that the public interest is in favor of allowing the OTB Parlor to open and operate, as reflected by the actions of the municipal and state authorities, who have issued the necessary permits and licenses for the OTB Parlor to open and operate at the

Shopping Center, and by the actions of the citizens of Niles, who voted in favor of establishing the OTB Parlor in an advisory referendum. In addition, Defendants argue that significant tax revenues to state and local governments would be lost if the opening and operation of the OTB Parlor was enjoined, and that the over fifty people who have been hired by Inter-Track to work at the OTB Parlor would be put out of a job. While we generally agree that the enforcement of contracts is an important public interest, we find that the public interest factor in this case clearly tips in favor of Defendants, especially in light of J.C. Penney's tenuous arguments regarding its contract claims.

V. Sliding Scale

The Seventh Circuit has stated that if the moving party meets all of the required factors for a preliminary injunction, "then the inquiry becomes a 'sliding scale' analysis where these factors are weighed against one another." *Joelner*, 378 F.3d at 619. In this case, we have found that none of the factors for a preliminary injunction support J.C. Penney's position. Accordingly, it is not necessary for the court to conduct the sliding scale analysis. J.C. Penney has the burden of clearly showing that a preliminary injunction is warranted. J.C. Penney has failed to meet its burden. Therefore, based on the above, we deny J.C. Penney's motion for a preliminary injunction.

## CONCLUSION

Based on the foregoing analysis, we deny J.C. Penney's motion for a preliminary injunction.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 3, 2006